# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, et al, <br><br> Plaintiffs, <br><br> vs. <br><br> CLAUDE E. ATKINS ENTERPRISES, INC. et al., <br><br> Defendants. _____/ | CASE NO. CV-F-05-0852 REC LJO <br><br> **ORDER ON PLAINTIFFS' MOTION TO DISQUALIFY DEFENSE COUNSEL** <br> (Doc. 64.) |

## **INTRODUCTION**[1]

Plaintiffs Travelers Casualty and Surety Company of America ("Travelers") and United States Fidelity & Guaranty Company ("USFG") seek to disqualify new defense counsel Braun & Melucci, LLP ("B&M") on grounds that B&M to failed to obtain Travelers and USFG's[2] informed written consent to represent defendants[3] in this construction bond indemnity action after B&M had represented Travelers in underlying litigation. This Court considered Travelers' motion to disqualify B&M on the record and VACATES the December 22, 2005 hearing, pursuant to this Court's Local Rule 78-230(h). For the reasons discussed below, this Court DENIES Travelers' motion to disqualify B&M.

---

[1] Pursuant to 28 U.S.C. § 636(c) and F.R.Civ.P. 73, the parties consented to proceed before a United States Magistrate Judge, and by an January 12, 2006 order, this action was assigned to United States Magistrate Judge Lawrence J. O'Neill for all further proceedings.

[2] By way of merger, Travelers is a successor-in-interest to USFG. For ease of convenience, USFG will be referred to collectively with Travelers as "Travelers" although USFG issued payment and performance bonds at issue here prior to the merger.

[3] Defendants comprise general contractor Claude E. Atkins Enterprises, Inc. ("Atkins Enterprises"), eight individuals and two partnerships and will be referred to collectively as "defendants."

1

# BACKGROUND

## Construction Project And Bonds

On July 5, 2001, Atkins Enterprises and the University of California Regents ("Regents") entered into a prime construction contract for a physical sciences building ("project") at the University of California, Santa Cruz ("University"). Travelers issued payment and performance construction bonds for the project. The bonds named Atkins Enterprises as bonds principal and the Regents as obligee. B&M has represented Atkins Enterprises for nearly 10 years in connection with various matters, including the project.

## Construction Disputes And Negotiations With Travelers

Payment and performance disputes arose between Atkins Enterprises and the University. Atkins Enterprises contended that the University issued defective contract documents, mismanaged the project and directed excessive changes to the scope of Atkins Enterprises' work to cause project delays. The University contended it could assess liquidated damages against Atkins Enterprises. Atkins Enterprises claimed it was entitled to contract time extension and extended overhead compensation.

In April 2004, the University informed Atkins Enterprises that the University intended to withhold liquidated damages from contract progress payments to Atkins Enterprises unless Travelers executed a surety consent to provide a reservation of rights by the University to withhold liquidated damages. With his April 19, 2004 letter, B&M partner William Braun ("Mr. Braun") requested Travelers in house claims attorney Jason S. Stonefeld ("Mr. Stonefeld") for Travelers' surety consent to allow the University to pay Atkins Enterprises without a liquidated damages deduction. Mr. Stonefeld contacted Mr. Braun to negotiate a surety consent, and Mr. Braun forwarded to Mr. Stonefeld an April 21, 2004 revised surety consent for Mr. Stonefeld's approval for Travelers.

Contract and payment disputes between Atkins Enterprises and the University continued. On April 28, 2004, the University demanded another Travelers surety consent to continue payments to Atkins Enterprises. Mr. Braun again contacted Mr. Stonefeld to inquire as to Travelers' position on surety consent. Mr. Braun as Atkins Enterprises' counsel and Mr. Stonefeld as Travelers' counsel attended several meetings with the University to address payment and performance disputes between Atkins Enterprises and the University.

The disputes escalated to the point that on June 8, 2004, Mr. Braun informed Mr. Stonefeld that Atkins Enterprises contemplated to walk off the project and to declare the University in breach of the construction agreement. At Mr. Braun's request, Mr. Braun attended a meeting with Travelers and its counsel in Seattle to address Atkins Enterprises claims against the University. Atkins Enterprises informed Travelers that Atkins Enterprises considered to terminated the construction contract with the University due to the University's default on the contract. Atkins Enterprises also asked for Travelers financial assistance.

On June 21, 2004, Atkins Enterprises gave the University written notice of Atkins Enterprises' intent to terminate the construction contract based on the University's default. Mr. Braun attended a July 28, 2004 claims resolution meeting and made statements for Atkins Enterprises. Mr. Stonefeld attended the meeting and made a statement as Travelers' counsel. Atkins Enterprises' claims against the University remained unresolved, and on July 30, 2004, Atkins Enterprise declared the University in breach of the construction contract. On August 3, 2004, Atkins Enterprises terminated the construction contract and suspended performance on the project. The University demanded Travelers, as Atkins Enterprises' surety, to finish the project.

**Underlying Subcontractor Actions**

After Atkins Enterprises suspended performance, subcontractors suspended their performance on the project and filed claims against Atkins Enterprises under the payment bond posted by Travelers. Subcontractors and suppliers followed up with more than a dozen lawsuits against Atkins Enterprises, Travelers and the University to claim compensation ("subcontractor actions"). Travelers tendered defense of numerous subcontractor actions to Atkins Enterprises and B&M as its counsel. B&M defended Atkins Enterprises and Travelers in the subcontractor actions in that according to B&M, Atkins Enterprises and Travelers' legal positions "were essentially the same in the joint defense of the subcontractor claims."

B&M points out that during the joint representation of Atkins Enterprises and Travelers:

1. Mr. Stonefeld represented Travelers, and B&M communicated directly with Mr. Stonefeld and "never communicated directly with an employee or representative" of Travelers;

2. Travelers never communicated information to Mr. Braun concerning Travelers "legal analysis of the subcontractor or supplier claims or any other privileged confidential information"; and

3. Mr. Braun never gave legal advice to Travelers because it was "always independently represented by Mr. Stonefeld."

On February 1, 2005, Travelers revoked its tender of defense to Atkins Enterprises and reassigned Booth, Mitchell & Strange LLP ("Booth, Mitchell") to represent Travelers in the subcontractor actions.[4] Mr. Braun's February 8, 2005 letter to Mr. Stonefeld outlined the status of the subcontractor actions. B&M continued to represent Atkins Enterprises in the subcontractor actions.

Mr. Braun attended and represented Atkins Enterprises at an October 12, 2005 settlement conference in Santa Cruz County Superior Court to address the subcontractor actions. Booth, Mitchell partner David Hughes ("Mr. Hughes") represented Travelers at the settlement conference. B&M points out that the settlement conference addressed "possible settlement of the various subcontractors and suppliers['] claims," not Atkins Enterprises' alleged indemnity obligation to Travelers. Travelers claims that at the settlement conference, Mr. Braun "advised that he could not discuss any indemnity issues in favor of Plaintiffs as it presented a conflict of interest for him." Mr. Braun contends that at the settlement conference, he never met with Mr. Hughes alone and "never received any confidential information" from Mr. Hughes.

**Indemnity Action Before This Court**

Travelers contends that defendants executed General Agreements of Indemnity ("GAIs") to indemnify Travelers from and against claims against the bonds. Travelers further claims that Atkins Enterprises defaulted on the project to result in the Regents' and subcontractor claims against the bonds. Travelers contends that it is entitled to recover costs and expenses from defendants, pursuant to the GAIs, and seeks from defendants indemnification exceeding $20 million. Defendants deny liability to Travelers under the GAIs and contend that potential offsets and Travelers' waiver and/or exoneration of indemnification preclude Travelers' recovery.

---

[4] Booth, Mitchell represents Travelers in this action also.

Travelers filed this indemnity action against defendants on June 28, 2005. Justin Harris ("Mr. Harris"), formerly of Walter Law Group, represented defendants in this action until November 14, 2006, when B&M substituted in Mr. Harris' place after he started at a new law firm. The parties agreed to continue discovery, motion and trial dates and to stay discovery pending a ruling on Travelers' motion to disqualify B&M on grounds that B&M failed to obtained Travelers' informed written consent to represent defendants adversely to Travelers in this action. This Court's November 17, 2006 order set:

1. A March 9, 2007 expert disclosure;
2. A March 23, 2007 supplemental expert disclosure;
3. An April 27, 2007 non-expert discovery cutoff;
4. A May 11, 2007 expert discovery cutoff;
5. An April 23, 2007 pretrial motion filing deadline;
6. A May 25 2007 pretrial hearing deadline;
7. A June 7, 2007 pretrial conference; and
8. A July 23, 2007 trial.

### Travelers' Disqualification Motion

On November 17, 2006, Travelers filed their motion to disqualify B&M. Travelers argues that this indemnity action and the subcontractor actions "arise out of the same project" and "are so intertwined that not only is there a 'substantial relationship,' the actions are directly related. It is impossible to separate the two other than legal theories." Travelers points out that most of the underlying actions were "resolved by payments from Travelers to the various bond claimants" and that this indemnity action addresses Travelers' claims against defendants "for payments made" on the payment and performance bonds. Travelers claims that confidential information was shared with B&M when B&M, representing Atkins Enterprises and Travelers, participated at a settlement conference where Mr. Hughes "appeared as a representative for Travelers" and "Travelers' settlement strategy was discussed at the mediation." Travelers concludes that B&M possesses "confidential information of Travelers" which cannot be shared with defendants and places B&M "in a classic conflict of interest" to warrant disqualification.

B&M responds that during its joint representation of Atkins Enterprises and Travelers, Travelers

had no reasonable expectation that communications to B&M would be withheld from Atkins Enterprises to vitiate Travelers' grounds to challenge B&M here. B&M contends that Mr. Stonefeld independently represented Travelers and that Travelers' confidential information was not provided to Atkins Enterprises. In his declaration unchallenged by Travelers, Mr. Braun states that:

1. All of Mr. Braun's communications with Travelers were through Mr. Stonefeld;
2. Mr. Braun never communicated directly with an employee or representative of Travelers;
3. Communications to and from Mr. Stonefeld were copied to Atkins Enterprises;
4. Mr. Braun never received information from Mr. Stonefeld that was not communicated to Atkins Enterprises;
5. The fact that Mr. Braun communicated everything to Atkins Enterprises was obvious to Mr. Stonefeld;
6. Travelers never communicated information to Mr. Braun concerning its analysis of the subcontractor or supplier claims or "any other privileged or confidential information";
7. Mr. Stonefeld never communicated confidential information to Mr. Braun;
8. Mr. Braun neither asked for nor received confidential information from Mr. Stonefeld or Travelers "regarding defenses or positions particular" to Travelers;
9. Mr. Braun never provided Travelers legal advice because Travelers was "always independently represented by Mr. Stonefeld"; and
10. Mr. Braun received no confidential information from Mr. Hughes during the October 12, 2005 settlement conference.

In his declaration, Mr. Braun concludes:

> Since I never communicated with [Travelers] except through its attorney Mr. Stonefeld, and I never received any communication from [Travelers] that was not either copied directly by [Travelers] to ATKINS, or understood by [Travelers] that the communication would be communicated by me to ATKINS, no confidential attorney client communications ever occurred between myself and [Travelers]. Because [Travelers] and its counsel Mr. Stonefeld could never have reasonably expected that I would withhold information provided to me from my longstanding client ATKINS, I never obtained confidential communications from [Travelers].

/ / /

/ / /

6

## DISCUSSION

### Disqualification Motions

A court "may disqualify an attorney from representing a client with interests adverse to those of a former client." *H.F. Ahmanson & Company v. Salomon Brothers, Inc.*, 229 Cal.App.3d 1445, 1451, 280 Cal.Rptr. 614, 617 (1991). A motion to disqualify counsel is a drastic measure which courts should hesitate to impose except when of absolute necessity. *Schiessle v. Stephens*, 717 F.2d 417 (7th Cir. 1983). A disqualification motion is often tactically motivated and tends to derail efficient progress of litigation. *Evans v. Artek Systems Corp.*, 715 F.2d 788, 791 (2nd Cir. 1983). The party seeking disqualification has a heavy burden and must satisfy a high standard of proof. *Evans*, 715 F.2d at 791. Disqualification motions are subject to strict judicial scrutiny given the potential for abuse. *Optyl Eyewear Fashion International Corp. v. Style Companies, Ltd.*, 760 F.2d 1045, 1049 (9th Cir. 1985).

With these legal standards in mind, the Court turns to the grounds for Travelers' motion to disqualify B&M.

### Actual Possession Of Confidential Information

To protect the confidentiality of the attorney-client relationship, California Rules of Professional Conduct, Rule 3-310[5] addresses representation of adverse interests and provides:

> (E) A [lawyer] shall not, without the informed written consent of the client or former client, accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the [lawyer] has obtained confidential information material to the employment.

A former client may seek to disqualify a former attorney from representing an adverse party by showing that the former attorney actually possesses confidential information adverse to the former client. *Ahmanson*, 229 Cal.App.3d at 1452, 280 Cal.Rptr. at 617.

Although Travelers claims confidential information was shared with B&M during its joint representation of Atkins Enterprises and Travelers, Travelers fails to articulate or describe the

---

[5] This Court's Local Rule 83-180(e) requires attorneys practicing before this Court to "comply with the standards of professional conduct required of members of the State Bar of California and contained in the State Bar Act, the Rules of Professional Conduct of the State Bar of California and decisions of any Court applicable thereto, which are hereby adopted as standards of professional conduct in this Court." The Ninth Circuit Court of Appeals has explained: "Because we apply state law in determining matters of disqualification, we must follow the reasoned view of the state supreme court when it has spoken on the issue." *In re County of Los Angeles*, 223 F.3d 990, 995 (9th Cir. 2000).

confidential information or to explain how such information is adverse to Travelers. Travelers rests on a "presumption" that B&M "had access to confidential information" due to B&M's joint representation of Atkins Enterprises and Travelers. Without requisite support for disqualification, Travelers relies on its claim that "settlement strategy" was discussed at an October 12, 2005 settlement conference with Mr. Braun at a time when Travelers acknowledges that B&M did not represent Travelers. In great detail, B&M and Mr. Braun in his declaration explain that B&M lacks confidential information adverse to Travelers in that, among other things, information which B&M received from Travelers through Mr. Stonefeld was freely given to Atkins Enterprises. In the absence of sufficient evidence, Travelers fails to meet its heavy burden to disqualify B&M based on actual possession of confidential information.

**Substantial Relationship Test**

Nonetheless, actual possession of confidential information need not be proved to disqualify the former attorney. *Ahmanson*, 229 Cal.App.3d at 1452, 280 Cal.Rptr. at 617; *Rosenfeld Construction Company, Inc. v. Superior Court*, 235 Cal.App.3d 566, 575, 286 Cal.Rptr. 609, 614 (1991). "Thus, where a former client seeks to have a previous attorney disqualified from serving as counsel to a successive client in litigation adverse to the interests of the first client, the governing test requires that the client demonstrate a '*substantial relationship*' between the subjects of the antecedent and current representations." *Flatt v. Superior Court*, 9 Cal.4th 275, 283, 36 Cal.Rptr.2d 537, 541 (1995) (italics in original).

The "most important facet" of the attorney-client relationship served by the substantial relationship test "is the preservation of secrets and confidences communicated to the lawyer by the client." *Trone v. Smith*, 621 F.2d 994, 998 (9th Cir. 1980). The substantial relationship test is implicated only if "the attorney was in a position where he could have received information that his former client might reasonably have assumed the attorney would withhold from his present client."

Courts "ask whether confidential information material to the current dispute would normally have been imparted to the attorney by virtue of the nature of the former representation." *Ahmanson*, 229 Cal.App.3d at 1454, 280 Cal.Rptr. at 619. This pragmatic approach focuses on the nature of the former representation and is well established in federal courts. *See, e.g., Trone*, 621 F.2d 994; *Government of India v. Cook Indus.*, 569 F.2d 737, 739 (2nd Cir. 1978). The substantial relationship test is "intended

1 to protect the confidences of former clients when an attorney has been in a position to learn them."
2 *Silver Chrysler Plymouth, Inc. v. Chrylser Mot. Corp.*, 518 F.2d 751, 757 (2nd Cir. 1975).
3 Disqualification "when there is no realistic chance that confidences were disclosed would go far beyond
4 the purpose" of the substantial relationship test. *Silver Chrysler*, 518 F.2d at 751.

      B&M emphasizes that Mr. Stonefeld was the source of its information from Travelers and that Mr. Stonefeld provided B&M and Atkins Enterprises the same information. As such, B&M argues that the substantial relationship test is inapplicable because Travelers knew that information provided to B&M would be disclosed to Atkins Enterprises. Travelers fails to demonstrate how application of the substantial factor test preserves secrets and confidences at issue here despite its unsupported claim that Travelers disclosed "confidential information." During its joint representation of Atkins Enterprises and Travelers, B&M was not in a position where it received information which Travelers reasonably assumed B&M would withhold from Atkins given the free flow of information among B&M, Travelers and Atkins Enterprises. The purported "settlement strategy" information was discussed with Mr. Braun after B&M ceased to represent Travelers. This Court draws significant inferences from Travelers' failure to respond meaningfully to Mr. Braun's declaration and thus concludes that Travelers lacks support that confidential information material to this indemnity action was disclosed to B&M. There has been no demonstration that confidential information material to this indemnity action normally would have been imparted to B&M by virtue of B&M's former joint representation of Atkins Enterprises and Travelers in the subcontractor actions.

      In applying the substantial relationship test, courts should focus on the factual and legal similarities of the representations and the nature and extent of the attorney's involvement with the cases. *Rosenfeld Construction*, 235 Cal.App.3d at 576, 286 Cal.Rptr. at 615*; Ahmanson*, 229 Cal.App.3d at 1455, 280 Cal.Rptr. at 620. "Subject" of representation includes "information material to the evaluation, prosecution, settlement or accomplishment of the litigation or transaction given its specific legal and factual issues." *Jessen v. Hartford Casualty Insurance Co.*, 111 Cal.App.4th 698, 712, 3 Cal.Rptr.3d 877, 887 (2003). Successive representations are "substantially related" when "information material to the evaluation, prosecution, settlement or accomplishment of the former representation given its factual and legal issues is also material to the evaluation, prosecution, settlement or accomplishment of the

current representation given its factual and legal issues." *Jessen*, 111 Cal.App.4th at 712, 3 Cal.Rptr.3d 887-888.

Travelers attempts to bolster a substantial relationship by arguing that this indemnity action and the subcontractors actions are "directly related" but address differing "legal theories." Although this indemnity action and the subcontractors action arise out of project bond claims, the actions differ to avoid substantial relationship test application. The focus of this indemnity action is defendants' obligations under the GAIs. Information material to defense of the subcontractor actions is not material to this indemnity action addressing different obligations. Moreover, Travelers fails to challenge meaningfully B&M's assertions that Travelers communicated no information as to Travelers' analysis of the subcontractor and supplier claims or "any other privileged or confidential information."

### **Absence Of Joint Litigant Confidences**

B&M argues that since Travelers and Atkins Enterprises were joint B&M clients, Travelers had neither confidentiality expectations nor a confidential relationship with B&M. B&M points to California Evidence Code section 962 which addresses multiple clients retaining the same attorney:

> Where two or more clients have retained or consulted a lawyer upon a matter of common interest, none of them, nor the successor in interest of any of them, may claim a privilege . . . as to a communication made in the course of that relationship when such communication is offered in a civil proceeding between one of such clients (or his successor in interest) and another of such clients (or his successor in interest).

"By selecting the same attorney, and making their communications in the presence of each other, each [joint client] waives his right to place those communications under the shield of professional confidence." *Croce v. Superior Court*, 21 Cal.App.2d 18, 20 (1937). "[C]ommunications made by parties united in a common interest to their joint or common counsel, while privileged against strangers, are not privileged as between such parties nor as between their counsel and any of them, when later they assume adverse positions." *Croce,* 21 Cal.App.2d at 20.

Although B&M fails to demonstrate application of a state evidence code in this Court, the absence of joint litigant confidences between Atkins Enterprises and Travelers supports B&M's arguments that Travelers disclosed no confidential information material to this indemnity action during B&M's joint representation of Travelers and Atkins Enterprises in the subcontractor actions.

### **Other Factors**

1      Other factors militate against the drastic measure of disqualification.  A disqualification motion may involve considerations of a client's right to chosen counsel, an attorney's interest to represent a client, the financial burden on a client to replace disqualified counsel, and possible tactical abuse underlying a disqualification motion.  *People ex rel. Dept. of Corps. v. Speedee Oil Change Sys., Inc.*, 20 Cal.4th 1135, 1145, 86 Cal.Rptr. 2d 816 (1999).    B&M has a longstanding relationship with defendants whose choice of counsel cannot be ignored.  Travelers has long been aware of B&M's representation of Atkins Enterprises.  Discovery, motion and trial dates have been continued to accommodate the disqualification issue, and disqualification of B&M could engender further delay.  In sum, Travelers has failed to meet its heavy burden with a high standard of proof to justify B&M's disqualification.

## CONCLUSION AND ORDER

For the reasons discussed above, this Court DENIES Travelers' motion to disqualify B&M.

IT IS SO ORDERED.

**Dated:  December 11, 2006**            /s/ Lawrence J. O'Neill
66h44d                                   UNITED STATES MAGISTRATE JUDGE